**Modified and Affirmed and Opinion Filed August 15, 2023**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

_____

### No. 05-22-00214-CR
_____

**PHILIP KRAMER TAGGART, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-84192-2018**

## MEMORANDUM OPINION

Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Nowell

A jury convicted Philip Kramer Taggart of three counts of indecency with a child by contact. In two issues, appellant argues the evidence is insufficient and the trial court abused its discretion by providing unreasonable conditions of community supervision. We affirm the trial court's judgment for Count I. We modify the judgments for Counts II and III and affirm as modified.

### A. Sufficiency

In his first issue, appellant argues the evidence is insufficient to show he committed three separate and distinct offenses as charged. When reviewing the

sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). The verdict will be upheld if any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *Id.* "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The finder of fact is the sole judge of the weight and credibility of the evidence. *Edward*, 635 S.W.3d at 655. When considering a claim of evidentiary insufficiency, we must keep in mind that the finder of fact may choose to believe or disbelieve all, some, or none of the evidence presented. *Id.* The evidence is sufficient to support a conviction if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id.* at 655-56 (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination. *Id.*

As is relevant here, a person commits an offense if the person engages in sexual contact with a child younger than 17 years of age. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). "Sexual contact" means one of a list of acts if committed with the intent to arouse or gratify the sexual desire of any person, including any touching of

–2–

the breast through clothing. *See id.* § 21.11(c). A child victim's testimony alone is sufficient to support a conviction for indecency with a child. *Keller v. State*, 604 S.W.3d 214, 226 (Tex. App.—Dallas 2020, pet. ref'd). In the context of indecency with a child, the fact finder can infer the requisite intent to arouse or gratify sexual desire from a defendant's conduct, remarks, and all the surrounding circumstances. *Id.*

M.H. testified she began taking private cello lessons with appellant when she was in sixth grade, which was when she was twelve or thirteen years old. During those lessons, appellant would touch her shoulder or knee to tap out a beat or he would touch her shoulders, elbows, upper hand, or fingers to correct her form.

M.H.'s relationship with appellant gradually changed when she was in ninth grade. Appellant told her she was beautiful, said she could come to his studio if she needed a place to go without her parents knowing, and said she could "tell him anything and have my parents not know about it." When she made mistakes during lessons, appellant made "jokes about tying me up and spanking me or whipping me with the bow or punishing me." He told her about "inappropriate scenes" in movies, about his marital problems, he often thought about her between lessons, she was special and he adored her, and "I was dangerous or looking to get him in trouble." Appellant and M.H. exchanged text messages; most of those messages related to the cello lessons. However, he also texted her: "You're a very special girl," "Very sweet very talented and a little dangerous," "Always dangerous," "Behave or I'll tie you

to something and apank [sic] you," and "I would love you forever." M.H. testified appellant also made sexual comments to her about violent sexual acts, such as "[s]panking, tying me up, whipping me, those things."

During M.H.'s lessons, appellant continued touching her shoulder and knee as he had done before, but over time "the touches would move. Taps on the shoulder would come down to taps lower on the shoulder to onto [sic] my [upper] chest." Likewise, the taps on her knee "would move up my leg over time to my upper thigh or near my crotch." Eventually, appellant's taps moved "to the top part of my breast to later cupping the side of my breast." M.H. testified she recalled three specific incidents when appellant touched her breast, although he did so more than three times; she explained the details of the incidents ran together.

On one occasion, appellant placed his hands on M.H.'s shoulders while they were talking. As he leaned forward to point to something in the music, "with his other hand, he brought it down to cup my breast and left it there." On a different occasion, appellant had his arm around M.H. to hug her and congratulate her on playing music she had struggled to play well. While his arm was around her shoulder, he moved it down to touch and cup her breast "while stroking his thumb across" the top part of her breast. She testified she was wearing a tank top and had exposed skin. M.H. testified there was another occasion when he touched her breast "the same way as before."

Appellant argues the evidence is insufficient to show he committed three separate and distinct offenses as charged; rather, he argues, the evidence shows one or two separate offenses. We disagree. As described above, M.H. testified about three separate incidents: one when he was standing behind her and cupped her breast while pointing to the music, a second when he hugged her to congratulate her on playing the music well, and a third when he touched her breast "the same way as before." Applying the standard of review for legal sufficiency in a criminal case, we conclude the evidence is sufficient for any rational trier of fact to have found all the essential elements of the offense beyond a reasonable doubt. We overrule appellant's first issue.

## B. Conditions of Community Supervision

In his second issue, appellant argues the trial court abused its discretion by providing unreasonable conditions of community supervision. Appellant's second issue relates only to the judgments for Counts II and III.

### 1. Preservation & Invited Error

The State's initial response to appellant's second issue is that he failed to preserve any error relating to the conditions of community supervision for review.

On February 11, 2022, the jury assessed punishment for each count. As to Count II, the jury assessed punishment at eight years' confinement and recommended community supervision. As to Count III, the jury assessed punishment at two years' confinement and recommended community supervision. The trial court

sentenced appellant in accordance with the jury's verdict on that day. At that time, the judge stated the terms and conditions of community supervision would follow later. Appellant filed his motion for new trial on March 10, 2022. The conditions of community supervision were filed with the district clerk on March 15, 2022.

A defendant must file a motion for new trial "no later than thirty days after the date when the trial court imposes or suspends sentence in open court." TEX. R. APP. P. 21.4(a). The motion may be amended without leave any time within the thirty-day limit so long as the trial court has not already ruled on the motion. TEX. R. APP. P. 21.4(b). Rule 21.4 bars amendments outside of the thirty-day time limit, even with leave of the court, so long as the State properly objects. *State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013); *see also State v. Arizmendi*, 519 S.W.3d 143, 150 (Tex. Crim. App. 2017) ("The motion can be amended at any time during that thirty-day period, but the trial court is barred from considering a ground raised outside the thirty-day period if the State properly objects.").

In this case, the trial court imposed the sentences in open court on February 11, 2022. The conditions of community supervision about which appellant complains were not filed until March 15, 2022, after the expiration of the thirty-day time period wherein appellant could have filed an amended motion for new trial. Appellant filed his motion for new trial on March 10, 2022; at that time, he could not have raised his complaints about the terms of community supervision because the conditions were unknown to him.

The timing of the trial court's entry of the terms of community supervision in Counts II and III left appellant without the ability to preserve his objections before the trial court. Appellant could not include objections to the terms of community supervision in his motion for new trial because the conditions had not yet been filed. Based on the facts in this case, we conclude appellant did not have an opportunity to raise his complaints about the terms of his community supervision for the trial court to consider. Accordingly, he has not waived his complaints by failing to raise them in a motion for new trial. *See Dansby v. State*, 448 S.W.3d 441, 447 (Tex. Crim. App. 2014) (to be subject to procedural default for failure to object to terms of community supervision, "a defendant must be aware of the condition of community supervision in time to object at trial"); *see also Burt v. State*, 396 S.W.3d 574, 577-78 (Tex. Crim. App. 2013) ("An appellant fails to preserve error by failing to object when he had the opportunity; conversely, if an appellant never had the opportunity to object, then he has not forfeited error.").

The State next argues appellant specifically consented on the record to conditions 15 and 34 (terms about which he now complains) and he "agreed and actually seemed to insist" on those conditions on the record. Condition 15 requires appellant to submit to and complete a Sex History Polygraph, and condition 34 states appellant shall promptly and truthfully answer all inquiries and furnish all information requested by the Supervision Officer. At sentencing, the trial court

stated the terms and conditions of community supervision would follow. The following exchange then occurred:

> [Court]: The following terms and conditions will be standard, what I'll call, sex offender conditions, sex offender caseload. I don't think it's standard to polygraph either sexual history or instant offense polygraphs. That's not standard, is it?
> [Appellant's Counsel]: I think it is. It's mandated as part of the State program. So when they do the sex offender counseling, they're mandated to do that, and he's required to participate faithfully in sex offender counseling. So that loops it in for - -
> [Court]: Okay. I just want to make sure that's part of the conditions of probation.
> [State's Attorney]: Yes.

The State asserts this exchange shows appellant consented to these conditions and cannot now challenge them. The exchange shows appellant's lawyer believed the polygraph of sexual history or "instant offense" was standard and stated appellant would be required to participate in sex offender counseling. We disagree with the State's characterization that, through his statements, appellant's counsel agreed or insisted that conditions 15 and 34 be included in the terms of community supervision. Rather, there was a vague exchange that the "standard" conditions would be ordered and what those might be. Based on this exchange, we cannot conclude appellant consented to any terms of community supervision.

### 2. Conditions of Community Supervision

A judge may impose "any reasonable condition [of community supervision] that is not duplicative of another condition and that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the

defendant." TEX. CODE CRIM. PRO. art. 42A.301(a). "[T]he trial court has broad discretion, not only in deciding whether to grant community supervision, but also in determining the conditions of that supervision." *Butler v. State*, 189 S.W.3d 299, 303 (Tex. Crim. App. 2006); *see also Adams v. State*, No. 05-21-00521-CR, 2022 WL 1793416, at *2 (Tex. App.—Dallas June 2, 2022, no pet.) (mem. op., not designated for publication). A condition of community supervision may be invalid if it: (1) has no relationship to the crime, (2) relates to conduct that is not in itself criminal, and (3) forbids or requires conduct that is not reasonably related to the future criminality of the defendant or does not serve the statutory ends of community supervision. *Adams*, 2022 WL 1793416, at *2 (citing *Mitchell v. State*, 420 S.W.3d 448, 449–50 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). When a trial court imposes an invalid condition of community supervision, the proper remedy is to reform the judgment by removing the condition. *Shortt v. State*, No. 05-13-01639-CR, 2018 WL 2042008, at *1 (Tex. App.—Dallas May 2, 2018, no pet.) (mem. op., not designated for publication) (citing *Ex parte Pena*, 739 S.W.2d 50, 51 (Tex. Crim. App. 1987)).

In the judgments for Counts II and III, appellant was ordered to comply with 55 conditions of community supervision. On appeal, he challenges fourteen of those conditions: numbers 6, 10, 12, 15, 30, 31, 34, 35, 36, 39, 40, 42, 43, and 46.[1] The

---

[1] The fact section for appellant's second issue contains screenshots of some of the conditions of community supervision signed by the judge. The screenshots include condition 38. However, in the analysis

State's brief includes no responsive arguments to appellant's substantive challenges to these fourteen conditions.

### a. Condition 6

Condition 6 states: "Avoid injurious or vicious habits." Appellant argues this condition is unreasonable because it is vague, indefinite, or uncertain. The conditions of community supervision should be expressed clearly and explicitly so that the defendant understands what is expected of him. *See Rickels v. State*, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003); *see also Menchaca v. State*, No. 2-04-283-CR, 2005 WL 247796, at *1 (Tex. App.—Fort Worth Feb. 3, 2005, no pet.) (mem. op., not designated for publication). The code of criminal procedure provides that conditions of community supervision may include conditions requiring the defendant to "avoid injurious or vicious habits." TEX. CODE CRIM. PRO. ANN. art. 42A.301(b)(2).

While the trial court could impose conditions requiring appellant to avoid injurious or vicious habits, simply stating that appellant must avoid injurious or vicious habits is not a condition that satisfies the statute. Condition 6 does not clearly and explicitly set forth the actions appellant must avoid such that appellant can understand what is expected of him. We conclude this condition is ambiguous and should be removed.

---

section for appellant's second issue, appellant does not argue condition 38 is invalid. We conclude appellant has not challenged condition 38 on appeal.

b.    Conditions 10, 12, and 30

Appellant argues conditions 10, 12, and 30 are invalid. These conditions require appellant to submit urine samples for testing, submit to a substance abuse evaluation, and not purchase, possess, or consume prescription medications not in his name and not consume alcohol for any reason. Appellant asserts there is no evidence he has any type of substance abuse issue or that alcohol or other substances played any role in the offense. Further, he argues, except for the requirement that he not consume prescription medications not in his name, none of these conditions relates to conduct that is itself criminal. Finally, because there is no evidence he has a substance abuse problem, the requirements are not reasonably related to his future criminality. We agree. With the exception of the requirement that appellant not consume prescription medications not in his name, conditions 10, 12, and 30 have no relationship to the crime, do not relate to conduct that is criminal, and do not forbid or require conduct reasonably related to appellant's future criminality.

We remove conditions 10 and 12 from the judgments for Counts II and III. We modify condition 30 to state: "The defendant shall not consume prescription medications not in the defendant's name. The Supervision Officer shall be informed of all prescriptions."

c.    Conditions 15 and 34

Appellant argues conditions 15 and 34 are invalid because they violate his Fifth Amendment constitutional right against self-incrimination. Condition 15

–11–

requires appellant to "submit to and successfully complete a sex history polygraph," and condition 34 requires him to "promptly and truthfully answer all inquiries directed to [him] and furnish all information requested by the supervision officer. This includes any report or form that the community supervision and corrections department would require." Appellant's argument relies on the court of criminal appeals' decision in *Dansby v. State*, 448 S.W.3d 441 (Tex. Crim. App. 2014). We consider *Dansby* distinguishable.

Dansby pleaded guilty to indecency with a child. *Id*. at 444. The trial court placed Dansby on deferred-adjudication community supervision and ordered him to comply with "sex offender terms and conditions," without providing any specific details as to what the conditions would require. *See id*. That same day, the general conditions were modified to require Dansby to take and pass a polygraph examination "without any admissions" and to successfully complete a sex offender treatment program. *See id*.

Dansby complied with most of the requirements of his community supervision, except that he refused to answer questions about his victims other than the complainant in his case. *See id*. Based on his refusal to answer questions about other victims, he was determined to have failed to participate fully in his sex offender treatment, and the State moved to revoke his community supervision. *See id*. at 444–45. Dansby pleaded "not true" and filed a motion to quash the State's motion to revoke and the order modifying the conditions of community supervision asserting

the conditions he allegedly violated infringed on his Fifth Amendment right against self-incrimination. *See id.*

The court of criminal appeals addressed only the "narrow question . . . whether the record shows that appellant was placed on notice that his conditions of community supervision would require him to waive his Fifth Amendment constitutional right with respect to his revelations about other victims while discussing his sexual history." *Id.* at 446. The court concluded Dansby did not forfeit his complaint that his Fifth Amendment rights would be violated if he were to answer questions during sex-offender counseling and a polygraph examination about sexual-assault victims other than the complainant in this case. *See id.* at 452. Notably, the court did not decide whether the mere existence of conditions like the ones about which appellant complains in this case violate a person's Fifth Amendment rights. Accordingly, we do not conclude *Dansby* controls the analysis of this issue.

"[A] trial court does not abuse its discretion by requiring a defendant to submit to a polygraph examination as a condition of community supervision." *Selby v. State*, 525 S.W.3d 842, 853 (Tex. App.—Beaumont 2017, no pet.) (citing *Ex parte Renfro*, 999 S.W.2d 557, 560-61 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)). "Polygraph examinations are reasonable conditions if used to assist in treatment, planning, and case monitoring." *Id.* (citing *Mitchell v. State*, 420 S.W.3d 448, 451 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). The condition is not unreasonable

–13–

because it requires the appellant to either submit to an examination or assert his Fifth Amendment right to remain silent, because a defendant cannot be penalized for asserting his Fifth Amendment rights. *Id.* (citing *Mitchell*, 420 S.W.3d at 451-52).

Appellant does not yet know whether he will be asked to respond to any incriminating questions that would implicate his Fifth Amendment right. "The mere fact that he [will be] required to submit to polygraph questioning as a condition of his community supervision [does] not constitute an infringement of the privilege against self-incrimination." *Arnone v. Syed*, No. 3:17-CV-03027-E, 2020 WL 2085594, at *7 (N.D. Tex. Apr. 30, 2020). We conclude appellant's complaint about conditions 15 and 34 is premature. If, in fact, appellant faces a situation similar to that in *Dansby*, then he may raise his Fifth Amendment objection at that time.

### d.    Conditions 31 and 42

Appellant argues conditions 31[2] and 42 are impermissible delegations of authority by the trial court and, as a result, are invalid. Condition 31 states appellant shall reside where the supervision officer directs and shall not move without the supervision officer's prior approval; appellant challenges the supervision officer's

---

[2] Appellant relies on *McArthur v. State*, 1 S.W.3d 323 (Tex. App.—Fort Worth 1999, pet. ref'd) to support his argument that the trial court impermissibly delegated authority to the supervision officer. In *McArthur*, the appellant challenged eleven conditions of community supervision as improper delegations of authority to the supervision officer. *See id.* at 333. In its analysis, the *McArthur* court relied on a statute stating that, absent a few enumerated exceptions, only the trial court could fix the terms and conditions of community supervision and the authority could not be delegated to a supervision officer. *See id.* (discussing TEX. CODE CRIM. PROC. ANN. art. 41.12, § 10(a)). However, that statute was later repealed. *See* Repealed by Acts 2015, 84th Leg., ch. 770 (H.B. 2299), § 3.01. Accordingly, we do not consider *McArthur* persuasive authority as to delegation.

authority to direct where he lives and does not challenge that he must obtain approval prior to moving. We agree that appellant's residence had no relationship to the crime, does not relate to conduct that is criminal, and the condition giving unfettered power to the supervision officer to direct where appellant shall live does not forbid or require conduct that is reasonably related to the future criminality of appellant and serves the statutory ends of community supervision. *See Adams*, 2022 WL 1793416, at \*2. We remove the portion of condition 31 stating "The defendant shall reside where the Supervision Officer directs." Condition 31 shall state: "The defendant shall not move without prior approval from the Supervision Officer."

Condition 42 states appellant shall abide by the Halloween Instruction Sheet given by the supervision officer. The record contains no information about the contents of the Halloween Instruction Sheet. Without information about the specific instructions, we cannot determine the trial court abused its discretion by imposing condition 42.

### e. Conditions 35 and 36

Appellant asserts conditions 35 and 36 are unreasonable restrictions on his First Amendment right to free speech. Condition 35 states appellant shall not access social networking sites, personal ad web pages, message boards, or online gambling sites until specifically approved by the supervision officer based on a predetermined authorized plan of use. Condition 36 states appellant shall not access the Internet for any reason from any Internet capable device unless specifically approved by the

–15–

supervision officer based on a pre-determined authorized plan of use to include Internet monitoring.

Our sister court recently considered a similar argument in *Archer v. State*, No. 13-18-00059-CR, 2019 WL 2221677 (Tex. App.—Corpus Christi–Edinburg May 23, 2019, no pet.) (mem. op., not designated for publication). In *Archer*, the appellant argued a restriction on his use of electronic social media violated his First Amendment rights. *See Archer*, 2019 WL 2221677, at *1. The court concluded that "because the conditions of Archer's community supervision were not a permanent ban on internet usage, but rather temporary conditions during his period of supervision," the restriction was not unconstitutional. *See id.* at *3 (discussing *United States v. Farrell*, No. 4:06-CR-103, 2018 WL 1035856, at *2 (E.D. Tex. Feb. 23, 2018)). We agree with the *Archer* court. Conditions 35 and 36 are not unreasonable restrictions on appellant's First Amendment right to free speech.

Additionally, article 42A.454 of the code of criminal procedure, titled Certain Internet Activity Prohibited, recognizes a trial court may limit Internet access for a defendant who is required to register as a sex offender under Chapter 62, is convicted of violating penal code section 21.11, used an electronic device used for internet access to engage in the conduct for which the person is required to register under Chapter 62, and is assigned a numeric risk level of two or three based on an

assessment conduct under Article 62.007.[3] *See* TEX. CODE CRIM. PRO. ANN. art. 42A.454. Appellant was convicted of indecency with a child by sexual contact pursuant to section 21.11 of the penal code, is required to register as a sex offender, and used his phone to send inappropriate texts to M.H.; appellant will be placed on community supervision when his terms of incarceration are completed. The conditions imposed on appellant are consistent with article 42A.454. Because of the nature of the offense, it is apparent that the trial court intended to limit appellant's access to the Internet generally and prohibit his access to internet sites where he might encounter children or other sex offenders. Minimizing the online spaces where appellant may encounter children or other sex offenders online furthers the goals of community supervision, which include protecting the community and punishing and reforming the defendant. *See* TEX. CODE CRIM. PRO. ANN. art. 42A.301 ("The judge may impose any reasonable condition that is not duplicative of another condition and that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant.").

We conclude the trial court did not abuse its discretion by imposing conditions 35 and 36.

---

[3] Information about appellant's assigned numeric risk level under Article 62.007 is not in our record.

f.     Conditions 39, 40, 43, and 46

Appellant argues conditions 39, 40, 43, and 46 are legally coerced and invalid. Condition 39 states appellant shall not request early release from the community supervision term; condition 40 states appellant shall not file a motion to modify the conditions of supervision for a period of three years and any modification must be agreed to by the State; condition 43 states appellant waives his right to appeal or file any motion for new trial; and condition 46 states he waives any future due diligence claims.

Conditions 39, 40, 43, and 46 do not have a relationship to the crime for which appellant was convicted, do not relate to conduct that is criminal, and forbid conduct that is not reasonably related to the future criminality of appellant and do not serve the statutory ends of community supervision. *See Adams*, 2022 WL 1793416, at *2. Accordingly, we reform the judgments for Counts II and III by removing the conditions 39, 40, 43, and 46.

**C.     Conclusion**

We affirm the judgment for Count I.

As to Count II:

- We remove conditions 6, 10, 12, 39, 40, 43, and 46 from the terms of community supervision.

- We strike the portion of condition 30 stating "The Defendant shall not consume alcohol for any reason." Condition 30 shall state: "The

–18–

defendant shall not consume prescription medications not in the defendant's name. The Supervision Officer shall be informed of all prescriptions."

- We strike the portion of condition 31 stating "The defendant shall reside where the Supervision Officer directs." Condition 31 shall state: "The defendant shall not move without prior approval from the Supervision Officer."

As modified, we affirm the judgment for Count II.

As to Count III:

- We remove conditions 6, 10, 12, 39, 40, 43, and 46 from the terms of community supervision.

- We strike the portion of condition 30 stating "The Defendant shall not consume alcohol for any reason." Condition 30 shall state: "The defendant shall not consume prescription medications not in the defendant's name. The Supervision Officer shall be informed of all prescriptions."

- We strike the portion of condition 31 stating "The defendant shall reside where the Supervision Officer directs." Condition 31 shall state: "The defendant shall not move without prior approval from the Supervision Officer."

As modified, we affirm the judgment for Count III.


/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

220214f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PHILIP KRAMER TAGGART,
Appellant

No. 05-22-00214-CR　　V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 296-84192-
2018.
Opinion delivered by Justice Nowell.
Justices Goldstein and Breedlove
participating.

Based on the Court's opinion of this date:

The judgment for Count I is **AFFIRMED**.

As to Count II:
- We remove conditions 6, 10, 12, 39, 40, 43, and 46 from the terms of community supervision.
- We strike the portion of condition 30 stating "The Defendant shall not consume alcohol for any reason." Condition 30 shall state: "The defendant shall not consume prescription medications not in the defendant's name. The Supervision Officer shall be informed of all prescriptions."
- We strike the portion of condition 31 stating "The defendant shall reside where the Supervision Officer directs." Condition 31 shall state: "The defendant shall not move without prior approval from the Supervision Officer."

As modified, the judgment for Count II is **AFFIRMED**.

As to Count III:
- We remove conditions 6, 10, 12, 39, 40, 43, and 46 from the terms of community supervision.

- We strike the portion of condition 30 stating "The Defendant shall not consume alcohol for any reason." Condition 30 shall state: "The defendant shall not consume prescription medications not in the defendant's name. The Supervision Officer shall be informed of all prescriptions."
- We strike the portion of condition 31 stating "The defendant shall reside where the Supervision Officer directs." Condition 31 shall state: "The defendant shall not move without prior approval from the Supervision Officer."

As modified, the judgment for Count III is **AFFIRMED.**

Judgment entered this 15th day of August, 2023.